## Andrew Surges v. The State.

### No. 5877.   Decided December 8, 1920.

**1.—Murder—Self-defense—Apparent Danger—Actual Danger—Charge of Court.**

Where, upon trial of murder, the defendant claimed that in a case in which the evidence presents the theory of self-defense upon apparent danger only, that a charge embodying the law of self-defense against an actual attack will not suffice, yet, where no phase of the law of self-defense was suggested by the evidence, this contention is without merit.

**2.—Same—Justifiable Homicide—Offense of Theft at Night—Malice.**

While article 1105, Penal Code, justifies a homicide when inflicted for the purpose of preventing the offense of theft at night, yet, if the killing was upon malice and not to prevent a theft or the consequences of a theft, it would not be justified under the Statutes, etc.  Following Laws v. State, 26 Texas Crim. App., 655.

**3.—Same—Rehearing—Requested Charge—Theft at Night.**

On closer scrutiny, this court is of opinion that the evidence in the instant case did disclose circumstances from which the jury might have inferred that defendant acted upon the reasonable belief that the deceased had stolen his whiskey, and that under Sub-division 8, Article 1105, Penal Code, the court should have given this phase of the case, under the facts, to the jury.  Following Gerard v. State, 78 Texas Crim. Rep., 300, and other cases;  however, the court does not change its view with reference to the law which governs;  and the rule stated in Laws v. State, 26 Texas Crim. App., 655, is correct, and the judgment is reversed and the cause remanded, for court's failure to submit requested charge.

Appeal from the District Court of Montgomery.   Tried below before the Honorable D. F. Singleton.

Appeal from a conviction of murder; penalty: twenty-five years. imprisonment in the penitentiary. ·

The opinion states the case.

*McCall & Crawford,* for appellant.—On question of justifiable homicide: Whitten v. State, 29 Texas Crim. App., 504; Hartfield v. State, 61 Texas Crim. Rep., 515; Gay v. State, 58 id., 472; Johnson v. State,. 218 S. W. Rep., 496 and cases cited in opinion.

On question of self-defense: Mundine v. State, 37 Texas Crim. Rep., 5;  Black v. State, 38 id., 58;  Carter v. State, 30 Texas Crim. App., 551.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On· question of self-defense: Blake v. State, 3 Texas Crim. App., 589;. Cloud v. State, 153 S. W. Rep., 895;. Burton v. State, 148 id., 805.

On question of justifiable homicide: Gay v. State, 125 S. W. Rep.,. 899.

MORROW, JUDGE.—The appellant shot and killed Will Young, was convicted of murder, and punishment fixed at confinement in the penitentiary for twenty-five years.

The appellant's counsel, in his able presentation of the case in brief and oral argument, is accurate in his conception of the law that in a case in which the evidence presents the theory of self-defense upon apparent danger only, that a charge embodying the law of self-defense against an actual attack will not suffice. It is encumbent upon the trial court to instruct the jury upon the law of the case as made by the evidence, and in one in which there is an absence of evidence of any fact upon which the jury could predicate a finding that, as viewed from the standpoint of the accused at the time, there existed in his mind a reasonable apprehension or fear of death or serious bodily harm, the court is justified in refusing to charge the jury upon the law of apparent danger. "The rule is universal that to warrant the taking of a life in self-defense there must have been reasonable ground for belief upon the part of the slayer that he was in immediate danger of loss of life or suffering serious bodily harm at the hands of the person killed. The belief need be no more than reasonable, however, and if the slayer act in good faith and with reasonable judgment and discretion, he will be excused, even though he err. If, however, through carelessness, or fright, or undue excitement, he takes the life of another when it is not necessary, and when there was no reasonable ground to believe that it is necessary, he is not excused. Such an emotional state may go in mitigation of the offense, and may reduce the grade from murder to manslaughter, but furnishes no complete justification or excuse for the taking of life." Ruling Case Law, vol. 13, p. 816; Tillery v. State, 24 Texas Crim App., 251; Ott v. State, 222 S. W. Rep., 261; May v. State, 6 Texas Crim. App., 191; State v. Beckmer, 3 L. R. A., New Series, p. 535, note, also note p. 540 and 543.

In the case before us, the State's evidence excludes the idea that the deceased, at the time he was shot or antecedent thereto, was doing or had done or said anything indicating hostility to the appellant. A party of negroes, including the appellant and deceased, were engaged in gambling. The appellant had a bottle of whisky which was sitting on the floor behind him, and from which he and the others present had from time to time during the game been taking a drink. Appellant missed the bottle of whisky. According to the State's evidence he drew his pistol, and demanded of those present to know its whereabouts. One of them told him that the deceased had taken it. At about that moment the deceased started to enter the room, and the appellant, without exchanging a word, fired and killed him. From the testimony of neither the State nor the appellant does it appear that the deceased had made any threat or any demonstration of hostility, other than the fact that he started to walk in the door. The State's testimony does not show that the deceased was present at

the time that the whisky was missed. It is undisputed that the parties in the room from time to time had been going in and out at the door, through which the deceased was attempting to enter at the time he was shot. No testimony save that of the appellant suggests any defensive theory, and his testimony, viewed in its most favorable light, from his standpoint, we think fails to state any fact which, if believed by the jury, would have authorized them to find that the appellant acted upon a reasonable apprehension of danger, as viewed from his standpoint at the time. Cloud v. State, 153 S. W. Rep., 892; Burton v. State, 67 Texas Crim. Rep., 149, 148 S. W. Rep., 805. That he was in no danger seems undisputed, at least the deceased was unarmed, and neither by word nor deed threatened the appellant. Of appellant's testimony, following is the substance: When he missed his bottle of whisky, appellant demanded to know who had taken it. One of the party, a negro named Anderson, said, "I will tell you who got it. Will Young (deceased) got your whisky." Quoting from appellant's testimony.

"Will made for the door. Allen Miller was leaning against the door and he told Allen to move and let him out. He rushed on out the door. He just rushed on out, and just as he was rushing on back, I was kind of frightened—I shot him. With reference to why I shot him, I was frightened. I knew he was larger and I was unable to fight him and I was—just meant to stop him."

He testified that he had had no previous trouble with deceased, either before or on the night of the homicide, that their relations during the game were friendly, and that he had no reason to believe deceased was a dangerous man. He said further:

"With reference to whether or not I knew at the time that he had my whisky,—no more than Anderson said, 'Will Young has got it'.— I had had a lot of whisky that night. At the time I fired my purpose was I wanted to stop him and I was frightened. . . . When I shot him at the door I did not notice anything about his hands or his movements, what they were just at that time. I was just frightened."

On cross-examination, appellant stated, "I did not shoot him because I thought he had my whisky. I shot him because I was frightened."

The court instructed the jury upon the law of manslaughter, and also upon self-defense. Complaint is made that in connection with the law of self-defense as given applied to actual danger, the court failed upon request to embody the law of apparent danger. For the reason that no phase of the law of self defense was suggested by the facts, the complaint is without merit.

Homicide is permitted by law when inflicted for the purpose of preventing the offense of theft at night, and is justifiable at any time while the offender is at the place where the theft is committed, or within

reach of gunshot from such place. Penal Code, Art. 1105. Constru-
ing this statute, it has been said:

"If the killing was upon malice and not to prevent a theft or the con-
sequence of a theft, it would not be justified under the statute, al-
though a theft by night was actually being committed by the deceased
at the time he was killed. It is not the intention of the statute to justify
murder. Such a construction of the statute would, to our minds, be
unreasonable and exceedingly dangerous." Laws v. State, 26 Texas
Crim. App. 655. This impresses us as a sound proposition, and so far
as we are aware it has not been modified. In the instant case, the ap-
pellant requested the court to instruct the jury in substance that if it
reasonably appeared to the appellant from the acts, or words, or both,
of the deceased that it was his purpose to steal the bottle of whisky,
and that the killing took place while the deceased was in the act of
committing a theft at night-time, or was still at the place, or within
reach of gunshot of the place, they would acquit, and that it would not
be material that the deceased might have abandoned the property and
been in the act of fleeing at the time he was shot. The statute relied
on declares that it must reasonably appear by the acts or by the words
coupled with the acts of the person killed that it was the purpose and
intent of such person to commit one of the offenses named. The
charges requested embodies the last named principle, but the question
is, what facts are disclosed by the record making it encumbent upon
the court to charge upon the issue presented by the special charge?
Conceding that in exercising his right to kill the thief under the cir-
cumstances stated in the statute, one's right would not be destroyed if
he formed and acted upon an honest belief through a mistake of fact
(Joy v. State, 57 Texas Crim. Rep., 102; Newman v. State, 58 Texas
Crim. Rep., 446), is not this record bare of evidence supporting such
theory? There is no evidence that the deceased had appellant's whisky;
no one saw him take it; and it was not found in his possession. Ap-
pellant says that the only reason he had for believing that he had it was
that one of the parties told him so. The deceased was not trying to
escape with the stolen property. He was, at the time he was shot, re-
turning after a moment's absence to the room in which he, the appel-
lant, and his companions were engaged in gambling. Specific dis-
claimer was made by the appellant of having shot because he thought
the deceased had his whisky, he affirming that he shot to stop him be-
cause he was frightened. The right to take the life of the deceased
when he was neither in the act of stealing the property nor fleeing did
not exist. Whitten v. State, 29 Texas Crim. App., 504; Hartfield v.
State, 61 Texas Crim. Rep., 515; Gay v. State, 58 Texas Crim. Rep.,
472. From the record and such precedents as have come to our atten-
tion, we entertain the view that in refusing the special charge to which
reference has been made the trial court was warranted by the law.

The verdict of the jury upon the issues which were raised by the
evidence, and which were submitted in a manner not complained of,

being supported by the evidence, an affirmance of the judgment must result, and it is so ordered.

*Affirmed.*

## ON REHEARING.

### December 8, 1920.

MORROW, JUDGE.—Reviewing the record in the light of appellant's motion for a rehearing, we have decided that we were not warranted in concluding that there were no facts in the record which required the court to instruct the jury in substance in accord with subdivision 8, of Article 1105, Penal Code, in which it is said:

"In cases of burglary and theft by night, the homicide is justifiable at any time while the offender is in the building, or at the place where the theft was committed, or is within reach of gunshot from such place or building."

On closer scrutiny, we are of opinion that the evidence does disclose circumstances from which the jury might have inferred that appellant acted upon the reasonable belief that the deceased had stolen his whisky. Gerard v. State, 78 Texas Crim. Rep., 300; Newman v. State, 58 Texas Crim. Rep., 443; Joy v. State, 57 Texas Crim. Rep., 102.

We have not changed our view with reference to the law which governs. We think the statement in Law v. State, 26 Texas Crim. App., 655, correct; that is, that though theft be committed, or though the accused believe it to have been committed, if in killing the thief he acted upon malice and not to prevent the theft or the consequences thereof, it would be murder; and upon another trial this principle should be embodied in the charge.

We deem it unnecessary to detail the facts in addition to those referred to in the original opinion. We will say, however, that one witness testified that the trouble started about Andrew's whisky; "he missed it; said he was going to have it. Tom Hutch showed him that he was not in possession of it. He asked for his whisky, and got his gun, and Anderson told him Will Young had it. The door opened, Will Young started in, and the shot was fired." Another witness testified that while demanding his whisky, the appellant drew his pistol, and was told: "Wait a minute and I will tell you who got your whisky. Will Young got it." At that time Will Young appeared in the door, and the pistol was fired. The appellant testified:

"I asked for my whisky. Anderson said: 'I ain't got your whisky,' and said: 'Wait a minute, I will tell you who got your whisky. Will Young got it.' Will Young made for the door. He ran out the door. My pistol dropped down by breeches leg, and I just pulled up the pistol as he was running out. He just rushed out, and just as he was rush-

ing on back, I was kinder frightened. I shot him. With reference to why I shot him, I was frightened. I knew he was larger, and I was unable to fight him. I meant to stop him. With reference to whether or not I knew at the time he had my whisky—no more than Anderson said: 'Will Young got it.' I wanted it. When I shot I thought he had my whisky. Anderson said he had it, and he rushed out and rushed right back. From the time he rushed out until he rushed back was not no time. I believed that he had my whisky. Young never attempted to go out until Anderson said he had my whisky, so he run out the door. He had done no more that night to make me kill him than taking my whisky. The reason I was frightened, I didn't know but what he might be armed."

For the reason stated, the motion for rehearing is granted, the affirmance set aside, and the judgment reversed and the cause remanded.

*Reversed and remanded.*